**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **ANHAM FZCO**<br>East Wing DAFZA<br>Bldg 4A, Suite Number 608<br>Dubai, United Arab Emirates;<br><br>and<br><br>**ANHAM USA, INC.**<br>1600 Tysons Boulevard, 6th Floor<br>McLean, Virginia 22102;<br><br>    *Plaintiffs*,<br><br>v.<br><br>**UNITED STATES**<br>**DEPARTMENT OF DEFENSE**<br>1000 Defense Pentagon<br>Washington, DC 20301-1000;<br><br>**PATRICK M. SHANAHAN**<br>Acting Secretary of Defense<br>(in his official capacity)<br>1000 Defense Pentagon<br>Washington, DC 20301-1000;<br><br>and<br><br>**UNITED STATES**<br>**DEFENSE LOGISTICS AGENCY**<br>8725 John J. Kingman Road<br>Fort Belvoir, Virginia 22060-6221;<br><br>    *Defendants*. | Civil Action No.: _____ |

**COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF**

1.    Plaintiffs ANHAM FZCO ("ANHAM") and ANHAM USA, Inc. ("ANHAM

USA") (collectively the "Companies") bring this action against Defendants Patrick M. Shanahan,

in his official capacity Acting Secretary for the United States Department of Defense, the United States Department of Defense, and the United States Defense Logistics Agency ("DLA" or "Agency"), under the Administrative Procedure Act ("APA"), 5 U.S.C. §§ 701-706, and the Declaratory Judgment Act, 28 U.S.C. § 2201, challenging DLA's invalid (void *ab initio*), arbitrary and capricious "suspension" of Plaintiffs from government contract awards.

## **INTRODUCTION**

2.      Since its founding, ANHAM has performed more than 35 government contracts in Iraq and Afghanistan, establishing a strong record of efficient and effective service in key regions.  ANHAM has successfully served as the prime contractor for the Subsistence Prime Vendor-Iraq, Jordan, and Kuwait ("SPV-K") program and for the Subsistence Prime Vendor-Afghanistan ("SPV-A") program.  ANHAM has provided stellar performance under these multibillion dollar contracts, distributing more than 2.5 billion pounds of food items to U.S. service members serving in these regions.  These two contracts generate approximately 99% of ANHAM's revenue.  ANHAM USA's sole business is providing support services to ANHAM.

3.      The basic terms of ANHAM's SPV contracts have expired and ANHAM is continuing to supply U.S. forces in these regions under one-year bridge contracts recently awarded by DLA.  DLA issued solicitations for replacement contracts.  ANHAM submitted responsive proposals for both the SPV-K and SPV-A solicitations.

4.      On December 27, 2018, DLA suspended ANHAM and ANHAM USA.  The suspensions immediately eliminated Plaintiffs from eligibility for U.S. government contracts without legal basis or factual justification, and with devastating consequences.

5.      The suspension is based solely on the indictment of A.H. ("Huda") Farouki, ANHAM's former CEO, and two other individuals associated with former ANHAM subcontractors.  DLA's Notice of Suspension ("Notice") outlined, in a cursory fashion, two

grounds for suspension: (1) affiliation with Huda Farouki, M. Farouki and S. Maarouf,[1] Ex. 1

(Mem.) at 4-5, and (2) imputation of Huda Farouki's alleged conduct to the Companies, *id.* at 3-

4.

6.    The Companies promptly demonstrated that the handful of facts DLA relied upon

with respect to affiliation were demonstrably and objectively wrong.  For example:

- Neither M. Farouki or S. Maarouf were ever employed by the Companies, or owned any interest in them.  They worked for former subcontractors with whom ANHAM had not worked since 2011.

- Huda Farouki resigned as CEO of the Companies in 2014, and has not been involved in management since.

- Prior to his indictment in November 2018, Huda Farouki resigned his position as one of four directors of the Companies, and he transferred his minority ownership interests to an irrevocable trust controlled by an independent trustee.  He exercises no current control over the Companies.

- Since 2014, the Companies have operated under new leadership, and are managed by CEO Jay Ward and President, Chief Operating Officer and Chief Compliance Officer Gaven Jones, both of whom have deep experience in Government contracting, and neither of whom had any involvement in the conduct alleged in the indictment.

Huda Farouki plainly neither "controls, [n]or has the power to control" the Companies.  48

C.F.R. § 9.403 (definition of affiliates).  DLA has not contested any of the above facts or

explained any theory demonstrating how control could be exercised.  Nonetheless, without any

explanation, the Agency has unreasonably continued to insist affiliation endures, despite the lack

of supporting evidence and the affirmative evidence to the contrary in the record.

7.    DLA's Notice also provided no factual support for its contention that Huda

Farouki's conduct should be imputed to ANHAM, which alone renders the suspension decision

improper.  The Notice also failed to discuss, much less demonstrate, any need for "immediate

---

[1] All three were jointly indicted on November 27, 2018 based on conduct alleged to have occurred during 2011–2013.

action . . . necessary to protect the Government's interest.  48 C.F.R. § 9.407-1(b).  The conduct

at issue is notably stale, centering around alleged actions occurring more than five years ago.

Since that time, ANHAM and ANHAM USA have employed the new management team and

become fundamentally different companies with a new organizational structure, more robust

internal controls, enhanced compliance programs and other improvements.  The Companies have

taken affirmative and immutable steps to eliminate all vestiges of control held by Huda Farouki.

8.      Courts have regularly held that basing a suspension on past acts, committed by

individuals no longer associated with the company, is improper.  *See, e.g., Sloan v. Dep't of

Hous. & Urban Dev.*, 231 F.3d 10, 17 (D.C. Cir. 2000) (holding suspension arbitrary and void *ab

initio* because it was based only on past misconduct).  DLA's Notice asserts no direct challenges

to the Companies present responsibility.  Nor could it credibly do so given DLA's own actions,

including finding ANHAM presently responsible just days before issuing the Notice.

9.      Even when presented with concrete evidence to the contrary, the Agency

summarily reaffirmed suspension.  DLA's suspension decision is factually flawed, and fails to

articulate any basis for an "immediate need" to suspend the Companies or provide any

explanation for determining the Companies lack "present responsibility."  *Cf.* 48 C.F.R.

§§ 9.407-1(b)(1), 9.407-2(c).  The decision is arbitrary, capricious, and unlawful.

10.     Accordingly, Plaintiffs pray for relief from DLA's invalid and void *ab initio*

suspension decision and arbitrary and capricious conduct.

## **PARTIES**

11.     Plaintiff ANHAM FZCO is a Dubai Airport Freezone Company headquartered in

the United Arab Emirates, with its principal offices located at DAFZA, East Wing, 4A Suite No.

608, Dubai, United Arab Emirates.

12.    Plaintiff ANHAM USA is a Virginia corporation headquartered in Virginia, with its principal offices located at 1600 Tysons Boulevard, 6th Floor, McLean, Virginia 22102.

13.    Defendant is Patrick M. Shanahan, Acting Secretary of the Department of Defense, acting in his official capacity.  His office is located at 1000 Defense Pentagon, Washington, D.C. 20301-1000.

14.    Defendant is the United States Department of Defense, and is headquartered at 1000 Defense Pentagon, Washington, D.C. 20301-1000.

15.    Defendant is the United States Defense Logistics Agency, and is headquartered at 8725 John J. Kingman Road, Fort Belvoir, Virginia 22060-6221.

## JURISDICTION AND VENUE

16.    The Court has jurisdiction pursuant to 28 U.S.C. § 1331 because the action arises under the APA, 5 U.S.C. §§ 701-706, and the Declaratory Judgment Act, 28 U.S.C. § 2201. Plaintiffs have no other adequate remedy in law for challenging the final agency action that is the subject of this Complaint.

17.    The United States has waived sovereign immunity from this lawsuit through the APA.

18.    Venue is proper in this judicial district under 28 U.S.C. § 1391(e) because the first-named Defendant, Patrick M. Shanahan, Acting Secretary of the Department of Defense, acting in his official capacity, resides in this judicial district.

## STANDING

19.    ANHAM and ANHAM USA have been denied the opportunity to compete for or receive contract awards as the result of DLA's improper suspension decision, and therefore have standing under Article III to challenge that decision in this Court.

## FACTUAL AND LEGAL BACKGROUND

### I.     REGULATORY FRAMEWORK

20.     Suspensions are governed by Title 48 Code of Federal Regulations ("C.F.R.") Federal Acquisition Regulation ("FAR") Part 9.4, Suspension, Debarment, and Ineligibility. Contractors that are suspended are excluded from "receiving contracts," and agencies must not "solicit from, award contracts to, or consent to subcontracts with [excluded] contractors."  48 C.F.R. § 9.405(a). The focus of these actions under the FAR is to preclude new contract awards in order to protect the government's business interests, and not to punish.  48 C.F.R. § 9.402(b).

21.      "Suspension is a serious action to be imposed . . . when it has been determined that immediate action is necessary to protect the Government's interest."  48 C.F.R. §  9.407-1(b)(1).  "The serious nature of debarment and suspension requires that these sanctions be imposed only in the public interest for the Government's protection and not for purposes of punishment."  48 C.F.R. §  9.402(a).  Therefore a suspension may only be issued when there is a "real need for immediate action to protect the public interest"  *See* Sloan, 231 F.3d at 17.

### II.    ANHAM AND ITS ORGANIZATION

22.     ANHAM is a logistics and project management company that works primarily as a United States government contractor in some of the most dangerous and challenging regions of the Middle East and South Asia.

23.     ANHAM is owned by three firms: 50% by GMS Specialised Services Holdings W.L.L. ("GMS"), 25% by Almaseera International Company E.C. ("Almaseera"), and 25% by Hii-Finance Corp. ("Hii-Finance").

24.     ANHAM's board currently has three members, with each holding 25% voting power.  Two of the directors are appointed by GMS and one by Almaseera.  The potential fourth

seat that would be appointed by Hii-Finance remains unfilled and will not be filled as Hii-Finance is in the process of divesting its share in the company.

25.     Hii-Finance was previously owned by Huda Farouki (33%) and his wife, Samia Farouki (67%).  The company is presently owned by two independent, irrevocable trusts established by Huda and Samia Farouki to remove any lingering possibility that they could exercise control over ANHAM or ANHAM USA.

26.     While at one time, Huda Farouki served as ANHAM's CEO and occupied a board seat as the director appointed by Hii-Finance, neither fact remains true.  Huda Farouki was removed as CEO in 2014, and has not been involved in management since.

27.     Since 2014, the Companies have operated under new leadership, who has instituted organizational changes, strengthened internal controls, introduced an enhanced compliance program, and made other institutional and operational modifications.

28.     In November 2018, Huda Farouki resigned his position as one of four directors of the Companies, and he transferred his 33% interest in Hii-Finance (amounting to an ~8% indirect interest in ANHAM) and 33% minority ownership interest in ANHAM USA to an irrevocable trust controlled by an independent trustee.

29.     Huda Farouki exercises no current control over the Companies.

## II.     ANHAM'S SUBSISTENCE PRIME VENDOR CONTRACTS

30.     Since 2010, ANHAM has successfully served as the prime contractor for the SPV-K program, and, since 2013, for the SPV-A program, under multiple contracts issued by DLA.[2]  These two program comprise ~99% percent of ANHAM's revenue.

---

[2] Prior to ANHAM assuming responsibility, both the SPV-K and SPV-A programs were tainted by multimillion dollar overpricing and fraud schemes.  In contrast, under ANHAM's management, the Government saved over $1 billion through competitive and honest pricing.

31.     The original performance periods on ANHAM's SPV-A and SPV-K contracts have expired.  DLA issued a solicitation on December 18, 2015 for the follow-on SPV-K contract, and the SPV-A recompete solicitation on December 2, 2016.  ANHAM submitted responsive proposals to both.  In the meantime, ANHAM has continued to supply U.S. forces in these regions under one-year bridge contracts.[3]  In awarding those contracts, DLA found ANHAM to be presently responsible.

## III.    EVENTS RELATED TO THE SUSPENSIONS

32.     On November 27, 2018, during the evaluation and negotiation period for the SPV-K and SPV-A procurements, the Department of Justice issued an indictment against Huda Farouki, and against two former ANHAM subcontractor employees.

33.     Concerned that DLA might take action against ANHAM, counsel for the Companies reached out to the appropriate DLA office responsible for suspension and debarment on November 30, 2018.  Counsel informed DLA that Huda Farouki no longer held any position with the Companies and transferred his minority ownership interests to an independent trust before being indicted at ANHAM's request.  Counsel for DLA indicated that DLA was not presently preparing any suspension or debarment action against ANHAM and scheduled a meeting to discuss the Companies' present responsibility for January 16, 2019.

34.     On December 17, 2018, the SDO suspended the three indicted individuals.  DLA did not include in the notice any indication that it was also suspending ANHAM or ANHAM USA.

---

[3] Specifically, DLA awarded ANHAM SPV-K bridge contracts on September 12, 2016 ($164,423,748.30 estimated value), September 11, 2017 ($236,000,000 estimated value) and September 13, 2018 ($261,664,253.74 estimated value).  Additionally, DLA awarded ANHAM bridge contracts for the SPV-A work on October 13, 2017 ($316,000,000.00 estimated value), and on December 19, 2018 ($392,500,000.00 estimated value).

35.     Notwithstanding the suspension of the individuals, on December 19, 2017, DLA

proceeded to award ANHAM a nearly $400 million bridge contract for SPV-Afghanistan.  As

with the other bridge contracts associated with the SPV programs, this award was authorized by

a Justification & Approval ("J&A") signed by the DLA Senior Procurement Executive and the

Office of the General Counsel.  As a basis for the J&A, DLA relied on the authority to permit

other than full and open competition when there is "Only One Responsible Source and No Other

Supplies or Services Will Satisfy Agency Requirements."  In addition the J&A noted that "only

ANHAM has the inventory, logistical network, and warehousing in place to support the high

volume demand of our customers."

36.     Eight days after finding the Companies responsible, on December 27, 2018, the

SDO suspended the Companies.  Ex. 1.  The Notice did not allege any misconduct directly

attributed to the Companies.  *See generally id.*  However, the SDO identified two "separate and

independent" grounds for suspending them.  *Id.* (Mem.) at 3-5.

37.     First, DLA asserted that the conduct that served as the basis for indicting Huda

Farouki, could be imputed to ANHAM because the conduct "occurred in connection with the

performance of his duties on behalf of Anham and Anham U.S.A."  *Id.* at 4.  In addition, DLA

asserted that imputation was appropriate because "there is adequate evidence that the misconduct

occurred with the company's knowledge, approval, or acquiescence."  *Id.*  Therefore DLA

determined the imputation of alleged criminal conduct "provides a cause for suspension pursuant

to FAR 9.407-2(c)."  The SDO identified no facts or "evidence" of any kind to support her

assertions.  *See generally id.*

38.     Second, DLA asserted that Huda Farouki and the two subcontractor employees

were considered to be affiliated with ANHAM.  DLA's only cited basis for affiliation was Huda

Farouki's alleged ownership interests in ANHAM FZCO and ANHAM USA and his alleged position as "the current Chairman of Anham U.S.A." *Id.* at 5. No facts supporting affiliation of the two other individuals was identified. Nonetheless, DLA determined that "[t]his affiliation provides a cause for suspension of Anham and Anham U.S.A. pursuant to FAR 9.407-2(c)."

39. The Companies' counsel promptly requested that the previously-scheduled meeting with the SDO be accelerated, but the request was denied.

40. In advance of the SDO meeting, the Companies, on January 9, 2019, submitted a written presentation in opposition to the suspension. The submission established that <u>none</u> of the indicted individuals were presently employed by, or had the ability to control, the Companies. M. Farouki and S. Maarouf were employees of subcontractors with whom ANHAM had not worked since 2014. Huda Farouki was replaced as ANHAM's CEO in 2014, and he has had no role in management since. Before his indictment, Huda Farouki had resigned his board of director seats. He also divested his minority ownership interest in the Companies to an independent trust.[4]

41. Concerned about the legitimacy of the SPV-K award and the potential to lose an opportunity to compete on the SPV-A award as a result of the improper suspension, the Companies filed an action challenging the suspension and reaward of the SPV-K contract in the U.S. Court of Federal Claims ("COFC") on January 10, 2019, Case No. 19-55C.

42. In connection with that case, the Government ultimately represented that it could only withhold making award of the SPV-A contract until April 30, 2019.

---

[4] While the SDO's claimed in the Notice that Huda Farouki owned 25% of ANHAM and 50% of ANHAM USA), his trust owned ~8% of ANHAM and ~33% of ANHAM USA through its partial ownership interest in Hii-Finance.

43.     On January 16, 2019, representative of the Companies, along with counsel, attended the meeting with the SDO's office to demonstrate ANHAM's present responsibility.

44.     During that meeting, the Companies described significant changes as evidence of their present responsibility, including new management that was installed after Huda Farouki was removed as CEO in 2014.  Since then, ANHAM has been run by executives recruited from outside the company.  The CEO, Jay Ward, is a former Air Force contracting officer and longtime government contractor executive.  The COO, Gaven Jones, is a veteran of the British Army and former contractor vice president.

45.     Following the meeting, the Companies provided the SDO with supplemental information on January 25, 2019.  In that submission, the Companies explained that they had effected a replacement of the trustee controlling the stake in Hii-Finance previously owned by Huda Farouki, and specifically offered to place Samia Farouki's ownership interests in Hii-Finance in a similar independent, irrevocable trust.[5]

46.     Without further communication, on February 11, 2019, DLA issued a terse memorandum affirming the suspensions:

> I have thoroughly reviewed the entire administrative record in this matter involving the suspension of Anham FZCO and Anham USA, Inc. (Respondents). My review has included the in-person presentations given on January 16, 2019, and all of your written submissions.  I have also applied the administrative record in this matter to the pertinent case law.

> It is my conclusion that based on the information currently in the administrative record, "imputation" and affiliation" remain valid separate and independent grounds in this case to provide for the suspension of Respondents, and that suspension of Respondents remains warranted and is in the public interest."

Ex. 2.

_____

[5] That independent and irrevocable trust, managed by persons unaffiliated with the Companies or Farouki family, was subsequently executed.

47.    The decision did not (1) contain any finding of facts; (2) address the Companies'
demonstration that Huda Farouki does not have the ability to exercise any control over them; (3)
provide any basis for contending Huda Farouki exercises control; (4) address the evidence
presented by the Companies that M. Farouki and S. Maarouf had no connection to them, and
thus, could not be considered affiliates; (5) identify the factual basis for imputing the alleged
misconduct on the Companies' present day management; and (6) give any indication what facts
or activities had changed in eight days from the determination that the Companies were presently
responsible to result in suspension; and (6) most importantly, discuss or consider whether the
Companies are presently responsible, or if there is an immediate need to suspend them for
activity that occurred many years prior. *See id.*

48.    On March 27, 2019, while the COFC action was still ongoing, the Companies
submitted a formal proposal to DLA in an attempt to resolve the suspension. While the
Companies believed existing steps had negated the prospect of any control by Huda Farouki over
their operations, they proposed additional extraordinary measures intended to obtain DLA's
complete confidence and resolve any lingering concerns. These measures included: (1)
instituting governance rules that remove the right of Hii-Finance to appoint a director to
ANHAM's board; (2) a sale of all of Hii-Finance's shares in the Companies to be completed
within 60 days of DLA lifting the suspension and limiting Hii-Finance's rights until that
occurred; (3) the appointment of an independent monitor; and (4) entering into an Administrative
Agreement with DLA. Based on the status of the SPV-A and SPV-K contract awards the
Companies requested the Government respond to their offer as soon as possible. No response
was immediately forthcoming. Finally, on April 22, 2019, DLA rejected the Companies'
proposal.

49.     Oral argument in the COFC action was originally scheduled for April 11, 2018, but was cancelled by the court.  Argument was rescheduled for April 25th, but was limited to addressing questions concerning the COFC's jurisdiction to hear suspension challenges and to standing.  Because the COFC raised legitimate concerns about the limits of its jurisdiction and invited ANHAM to pursue its suspension challenge in district court while COFC retained those counts of ANHAM's complaint that were clearly within its jurisdiction, Plaintiff's moved to dismiss its suspension challenges without prejudice.  On April 24th, the COFC granted Plaintiffs' motion to dismiss the suspension challenges, and judgment was entered on April 25, 2019.

## ALLEGATION AND BASIS FOR RELIEF

50.     In order for the Court to uphold an agency's suspension of a contractor, the decision to suspend must meet two fundamental standards.  First, it must have been "imposed on the basis of adequate evidence;" and second, it must have been based on the determination that "immediate action is necessary to protect the Government's interests."  48 C.F.R. § 9.407-1(b)(1) (emphasis added); *see also Sloan*, 231 F.3d at 15.  Additionally, as the Supreme Court has found, a court can only uphold an agency's administrative decision—such as a suspension—on the basis articulated by the agency itself.  *State Farm*, 463 U.S. at 50.  Courts may overturn agency decisions when they "[cannot] be squared with the applicable regulations," and "fail to 'articulate a satisfactory explanation for [the agency's] action including a rational connection between the facts found and the choice made.'"  *Sloan*, 231 F.3d at 15 (quoting *Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983)).  A suspension cannot stand where the agency's action is "devoid of any good reason" and is "flimsy at best, riding on the heels of a hastily-conducted and technically-flawed audit" or investigation.  *Id.* at 12, 16.

51.     The SDO's suspension decision was not based on claimed affirmative misconduct by the Companies.  Ex. 1  Rather, the SDO tersely identified two "separate and independent" bases for the action: (1) affiliation with Huda Farouki, M. Farouki, and S. Maarouf, and (2) imputation of Huda Farouki's alleged misconduct to the Companies.  *Id.* (Mem.) at 3-5. However, the Companies conclusively demonstrated the handful of "facts" the SDO cited to support affiliation were simply and objectively wrong.  Further, the SDO identified no basis for imputing Huda Farouki's conduct to the Companies, but regardless, the alleged conduct is more than five years old and the Companies have subsequently implemented large-scale senior management and organization changes.  The SDO's decision offers no basis for questioning the <u>present</u> responsibility of the Companies and does not articulate any reasoning that would support an "immediate need" for the suspension.

### <u>DLA's Affiliation Basis For Suspending ANHAM Is Wholly Unsupported And Irrational</u>

52.     There is <u>no evidence</u> to support a finding that Huda Farouki, M. Farouki, or S. Maarouf are affiliated with ANHAM, and the SDO's suspensions on this basis is arbitrary, capricious, and irrational.  Affiliation with a party is established when that party "controls or has the power to control" a company.  48 C.F.R. § 9.403.  And, a suspension premised on affiliation must be based upon "<u>adequate evidence</u>."  *Id.* at § 9.407-1(b)(1) (emphasis added).  Where, as here, a suspension for affiliation is based upon inaccurate or incomplete information, the agency must retract the suspension when the evidence does not support a finding of control.  *Caiola v. Carroll*, 851 F.2d 395, 400-01 (D.C. Cir. 1988).  Any factual disputes regarding control must be resolved through a hearing.  *Sameena Inc. v. U.S. Air Force*, 147 F.3d 1148, 1154 (9th Cir. 1998) (reversing district court order granting summary judgment for Air Force and remanding matter with instructions that Air Force hold an evidentiary hearing to address the issue of control).

53.     The SDO's claim of affiliation principally rests on the assertion that the

Companies "are affiliates of A.H. Farouki, M. Farouki, and S. [Maarouf]," which she based

based on her belief that "<u>A.H. Farouki maintains an ownership stake in Anham and Anham

U.S.A.</u>, and <u>A.H. Farouki remains the current Chairman of Anham U.S.A.</u>" Ex. (Mem.) 1 at 5

(emphasis added).  With respect to ownership, the SDO asserted that Huda Farouki "owned 25%

of Anham and 50% of Anham U.S.A." *Id.* at 2.  However, the actual facts demonstrate the

SDO's determination is baseless.

54.     No evidence supports—and the SDO's decision presents no underlying facts even

alleging—the Companies' affiliation with M. Farouki and S. Maarouf.  These two individuals

were never employed by either of the Companies.  Rather, both were former employees of

separate companies that formerly served as subcontractors to ANHAM, but have not had any

business relationship with the Companies for years.  The SDO did not even allege, much less

establish, that either individual had any ownership interest in the Companies or some other

means to control them.  And, in fact, neither exists.

55.     Further, Huda Farouki resigned as CEO of ANHAM and ANHAM USA in <u>2014</u>,

and subsequently has not served as an officer or manager of either company.  ANHAM and

ANHAM USA have now operated for five years under a robust and <u>fully independent</u>

management team.  And, in 2018, Huda Farouki, resigned his position as a board member of the

Companies.  Contrary to the SDO's assertion, Huda Farouki also is <u>not</u> the Chairman of

ANHAM USA.  Huda Farouki exercises <u>no</u> operational control over the Companies.

56.     With respect to ownership, the SDO misstated Huda Farouki's interests.  His

ownership of ANHAM only ever amounted to an indirect ~8% interest, and he only ever owned

a 33% interest in ANHAM USA.  These minority interests, in themselves, were insufficient to

exercise control over the Companies.  Moreover, prior to his indictment in 2018, Huda Farouki relinquished his ownership interests in both Companies by placing his interests into an irrevocable trust under the control of an independent trustee.  Accordingly, by the time the SDO considered the matter, Huda Farouki already had relinquished his ownership stake in ANHAM. Each and every one of these facts was known to the SDO through communications with Companies' counsel and ANHAM's January 9, 2019 written opposition to the suspension.

57.     When DLA finally met with ANHAM's counsel and representatives to discuss the suspension on January 16, 2019, DLA did not contest any of the factual information the Companies provided in their January 9, 2019 submission.  Nor did it provide any clear articulation of specific concerns or actions that the Companies should consider undertaking. Nonetheless, during the meeting, the Companies offered to take additional steps to assure DLA that they presented no risk.  For example, the Companies offered to engage an independent monitor.  And more broadly, the Companies offered to implement additional measures suggested by DLA to alleviate any concerns.  DLA proposed none during the meeting or subsequently.

58.     At the conclusion of the lengthy meeting, the SDO requested additional documentation.  The Companies promptly provided it.  In the absence of any meaningful guidance from DLA, the Companies also attempted to divine and resolve possible concerns that might be lingering.  At the Companies' request, Huda Farouki agreed to replace his original trustee (an ANHAM FZCO employee) with an attorney that had no prior relationship with the Companies.  Samia Farouki also agreed to place her ownership of Hii-Finance, which gave her a 17% indirect ownership interest in ANHAM, into a trust managed by an independent trustees.

59.     As a result, the Companies affirmatively demonstrated to the SDO that Huda Farouki (1) holds no position or title with ANHAM or ANHAM USA; (2) plays no role in the

management of the Companies; (3) possesses no ownership interest in ANHAM or ANHAM

USA; (3) never possessed more than a minority share in either company; (4) has no influence

over his wife's minority ownership interest in ANHAM (which is also in trust); and (5) has no

present ability to control either company.

60.     Although the SDO had clearly advised of her intent to further engage with the

Companies before deciding whether to terminate, retain, or modify the suspension, she issued

without any additional communication a terse affirmation of the suspensions on February 11,

2019.  T. 189.

61.     The SDO did not correct the inaccuracies contained in the original Notice and

failed to provide any tangible basis for justifying suspensions on the basis of affiliation.

62.     DLA's failure to address any of the evidence submitted and to only identify a

clearly erroneous factual basis for suspending based upon affiliation was arbitrary and capricious

and otherwise violated ANHAM's right to have proper notice, a hearing, and fact-finding.  This

ground for suspension must be overturned.

### There Is No Basis To Suspend ANHAM Based Upon Imputation

63.     The SDO's Notice asserted stated in a conclusory fashion:

A.H. Farouki's misconduct as described in the Indictment is imputed to Anham
and Anham U.S.A. because the misconduct occurred in connection with the
performance of his duties on behalf of Anham and Anham U.S.A., and also
because there is adequate evidence that the misconduct occurred with the
company's knowledge, approval, or acquiescence.

T. 165 at 40194.

64.     On its face, the SDO's Notice fails to identify any "evidence" supporting her

contention that the alleged misconduct occurred with the company's knowledge, approval, or

acquiescence.

65.     In addition, the conduct at issue is notably stale, centering around alleged actions occurring more than five years ago.  Since that time, the Companies have taken affirmative and immutable steps to eliminate all vestiges of control held by Huda Farouki.

66.     The defective Notice fails to satisfy due process requirements and this basis for suspension cannot stand.  Furthermore, the SDO's failure to identify any cogent factual basis for imputing Huda Farouki's conduct to the Companies renders this ground for suspension.

**DLA Irrationally Failed To Consider Central Issues:**
**Present Responsibility And**
**Whether Immediate Action Is Necessary To Protect The Government**

67.     Suspension is only permissible when a contractor is not presently responsible and immediate action is necessary.  48 C.F.R. § 9.407-2(c); *see also* 48 C.F.R. § 9.407-1(b)(2).

68.     Neither DLA's original Notice, nor its summary affirmation on February 11th, identify any "immediate need" to suspend the Companies.

69.     Similarly, neither document articulates any specific concerns regarding the Companies' present responsibility.

70.     The Companies provided DLA with compelling evidence that ANHAM and ANHAM USA were presently responsible and presented no immediate threat to the Government, having demonstrated years of successful performance, being deemed presently responsible days before the suspension, and under management with no connection to Huda Farouki.

71.     DLA did not contest this evidence.

72.     DLA's stubborn refusal to credit the Companies' significant presentation of information, without explanation, is unlawful and presents clear grounds for voiding the suspensions.  *See also Roemer v. Hoffman*, 419 F. Supp. 130, 132 (D.D.C. 1976) (setting aside debarment because agency had not adequately considered contractor's present and likely future responsibility in dealing with the government); *Silverman v. Dep't of Defense*, 817 F. Supp. 846,

849 (S.D. Cal. 1993) (stating that "agency is required to carefully consider any favorable evidence of responsibility" and afford a "meaningful opportunity to overcome a blemished past").

### DLA's Suspensions Are Irrationally Based On Punishment, Bias, Or Other Improper Motive

73.     The fact that DLA, without explanation, simply disregarded the substantial favorable evidence of responsibility presented by the Companies raises serious questions regarding the Agency's motivation.

74.     The core of DLA's stated concerns all revolve around the Companies' relationship with Huda Farouki.  On March 27, 2019, the Companies offered to take extraordinary measures to resolve the suspensions to eliminate even potential concerns DLA might have but otherwise failed to state in the suspension decision.  Specifically ANHAM would take immediate steps to eliminate Hii-Finance's ability to appoint a director, severely restrict its ownership rights, appoint an independent monitor, enter into an administrative agreement with DLA, and effectuate the complete separation of Hii-Finance from ANHAM through the sale of its share within 60 days after the suspension was lifted.

75.     DLA did not agree to lift the suspension in response to this proposal and has not indicated whether any or all of these steps would be sufficient to address its stated and unstated concerns.

76.      These facts suggest that the suspension decision is not based on any legitimate concern regarding affiliation or present responsibility, but a stubborn determination to exclude ANHAM from competing for DLA awards, and remove ANHAM's standing to continue its protest in the Court of Federal Claims regarding the SPV-K award.  It is simply an abuse of the Government's discretion not to lift the suspension where ANHAM has addressed all causes for

which the suspension was purportedly imposed.  *See* 48 C.F.R. § 9.407-3(d)(3) (citing 48 C.F.R.

§ 9.406-4(c) (providing that a suspension can be terminated where a contractor eliminates all

causes for which it was imposed).  Finally, it strongly suggests that the SDO improperly imposed

the suspension for punitive purposes.  *See id.* at § 9.402(b); *Sloan*, 231 F.3d at 18.  Such a

suspension is arbitrary and must be overturned.

## BASIS FOR INJUNCTIVE RELIEF

77.     The allegations contained in Paragraphs 1-76 are incorporated herein by

reference.

### Likelihood Of Success On The Merits

78.     As demonstrated in the preceding paragraphs, based upon DLA's improper acts,

Plaintiffs' challenge of DLA's suspension should be sustained.

### Irreparable Harm

79.     Preliminary and permanent injunction are necessary to preserve the status quo.

ANHAM regularly competes for Government contracts.  When suspended, ANHAM had ~6

active bids pending worth more than $4.3 billion, including the SPV-A recompete.  Thus,

injunctive relief is necessary to preserve the status quo.  Absent an injunction, the Companies

will suffer an immediate, irreparable injury for which they have no adequate remedy at law if the

Government is permitted to proceed with its suspension decision.

80.     A government contractor can show irreparable injury where the vast majority of

its business is derived from government contracts, and where the loss of those contracts would

put the company out of business.  As the incumbent SPV-A and SPV-K contractor, more than

99% of ANHAM's revenue is derived from its SPV-K and SPV-A performance.

81.     Without injunctive relief, the Companies will lose the ability to compete for any

contracts, cannot receive the SPV-K contract (with a maximum value of $1,379,062,596.75) that

it would have received for the DLA's improper award, cannot challenge DLA's improper award of the SPV-K contract, and will lose will lose the opportunity to fairly compete for the SPV-A contract (with a maximum value of $3 billion).  Without the opportunity to receive awards for contracts it has bid on, or any future contracts pending the suspension, ANHAM will lose nearly all current and potential sources of revenue within months.  ANHAM USA will similarly lose its only source of revenue.

82.     Timing is of the essence given that transition activities under the SPV-K contract have begun, and the Government has indicated it can only withhold making SPV-A contract award until April 30, 2019.  Thus, the Companies face dire, immediate, and irreparable harm.

83.     The stigma associated with the Companies' suspensions has negatively impacted their business reputation, which this Court has consistently held constitutes irreparable harm.

Balance of the Hardships

84.     The balance of the hardships favors Plaintiffs.  The Government will suffer no harm from rescinding the suspension.  A mere eight days before issuing the suspension, DLA deemed ANHAM presently responsible to receive government contracts.  The Government will not be harmed by ensuring its suspension of ANHAM and ANHAM USA complies with the FAR, satisfies due process, and is valid.  Nor will the Government be harmed by properly and fairly awarded SPV-K and SPV-A contracts.  In fact, the Government will benefit from the competition provided by ANHAM, a presently responsible contractor, in connection with the SPV-A and SPV-K procurements.

85.     Any collateral delay experienced by the Government in the SPV-A and SPV-K procurements as a result of an injunctive is not a valid basis to warrant a denial of relief.  There will be no harm to the performance of the SPV-K and SPV-A bridge program as ANHAM is currently performing under bridge contracts that do not expire until September 12, 2019 and

December 21, 2019, respectively.  DLA's needs (and those of the U.S. troops and personnel based in those regions) will not go unfulfilled while this suit is pending (and ANHAM's COFC's protest is permitted to move forward).  DLA's own extreme delay in seeking to suspend ANHAM based upon stale contract demonstrates that there is no immediate hardship to DLA while this Court considers the propriety of the suspension.

Public Interest

86.     Enjoining the Agency from enforcing an unlawful suspension will serve the public interest.  There are fatal flaws in DLA's suspension decision.  And, based on the timing of DLA's Notice, its actions appear calculated to preclude ANHAM from competing fairly in the SPV-A and SPV-K recompetes, and only serve to punish the Companies rather than protect the Government.  Because a suspension should be imposed only to protect the Government when necessary rather than for purposes of punishment, *see* 48 C.F.R. § 9.402(b), public interest favors an injunction.  And, "upholding constitutional rights serves the public interest."

**COUNT I**
**Violation of the Administrative Procedure Act, 5 U.S.C. §§ 701-706**
**(ANHAM FZCO)**

87.     The allegations contained in Paragraphs 1-86 are incorporated herein by reference.

88.     DLA's suspension of ANHAM FZCO on December 27, 2018 constituted a final agency action, reviewable pursuant to 5 U.S.C. § 706, as does DLA's decision February 11, 2019 decision to uphold the suspension.

89.     The APA compels a reviewing court to hold unlawful an agency action that is "contrary to constitutional right" or "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law."  5 U.S.C. § 706(2)(A)-(B).

90.     Pursuant to the FAR, suspensions may only be imposed on the basis of "adequate evidence, pending the completion of investigation or legal proceedings, when it has been determined that immediate action is necessary to protect the Government's interest."  48 C.F.R. § 9.407-1(b)(1) (emphasis added).

91.     There is no evidence, adequate or otherwise, in the administrative record to justify the immediate suspension of ANHAM based on affiliation between ANHAM and Huda Farouki, M. Farouki, and S. Maarouf.

92.     ANHAM conclusively demonstrated to DLA that the handful of "facts" cited in the Notice to support affiliation were wrong and that neither Huda Farouki, nor the two other named individuals,  have the ability to control the Companies.

93.     Additionally, the SDO's Notice fails to identify any "evidence" supporting her contention that the alleged misconduct occurred with ANHAM's knowledge, approval, or acquiescence.  Nor is there any no evidence in the administrative record to justify the immediate suspension of ANHAM based on imputation.

94.     Further, the conduct at issue is notably stale, centering around alleged actions occurring more than five years ago.  Since that time, ANHAM has taken affirmative and immutable steps to eliminate all vestiges of control held by Huda Farouki.

95.     The FAR requires that a suspension "be imposed only in the public interest for the Government's protection and not for purposes of punishment."  *Id.* at § 9.402(b).

96.     DLA's suspension decision offers no basis for questioning the present responsibility of ANHAM, and does not articulate any reasoning that would support an "immediate need" for the suspension.  Nor does anything in the administrative record demonstrate that any immediate action was necessary to protect the Government's interest.

23

DLA's suspension of ANHAM on such a basis is arbitrary, capricious and otherwise not in accordance with the law in violation of the APA.

97.     Similarly, the February 11, 2019 decision to uphold the suspension of ANHAM did not correct the inaccuracies contained in the original decision, and failed to provide any tangible basis for concluding that continued suspension on the basis of affiliation was justified.

98.     The Agency's inaction and willful non-responsiveness to ANHAM's offer to address each of DLA's stated bases for the suspension suggest that the suspension decision is not based on any legitimate concern regarding affiliation or present responsibility, but an illegal determination to exclude ANHAM from competing for DLA awards, and remove ANHAM's standing to continue its protest in the Court of Federal Claims regarding the SPV-K award.  It also violates the Agency's duties to "conduct business with integrity, fairness, and openness." *See id.* at §§ 1.102-2, 3.101-1.

99.     DLA's suspension of ANHAM on such a basis is arbitrary, capricious and otherwise not in accordance with the law in violation of the APA.

100.    This violation of the APA is presently causing ANHAM reputational and competitive harm, and for which ANHAM will have no adequate remedy at law if the Government is permitted to proceed with its suspension decision, jeopardizing its very viability. DLA's suspension action against ANHAM must be found void *ab initio*.

**COUNT II**
**Violation of the Administrative Procedure Act, 5 U.S.C. §§ 701-706**
**(ANHAM USA)**

101.    The allegations contained in Paragraphs 1-100 are incorporated herein by reference.

102.     DLA's suspension of ANHAM USA on December 27, 2018 constituted a final agency action, reviewable pursuant to 5 U.S.C. § 706, as does DLA's decision February 11, 2019 decision to uphold the suspension.

103.     The APA compels a reviewing court to hold unlawful an agency action that is "contrary to constitutional right" or "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law."  5 U.S.C. § 706(2)(A)-(B).

104.     Pursuant to the FAR, suspensions may only be imposed on the basis of "adequate evidence, pending the completion of investigation or legal proceedings, when it has been determined that immediate action is necessary to protect the Government's interest."  48 C.F.R. § 9.407-1(b)(1) (emphasis added).

105.     There is no evidence, adequate or otherwise, in the administrative record to justify the immediate suspension of ANHAM USA based on affiliation between ANHAM USA and Huda Farouki, M. Farouki, and S. Maarouf.

106.     ANHAM USA conclusively demonstrated to DLA that the handful of "facts" cited in the Notice to support affiliation were wrong and that Huda Farouki had no present ability to control ANHAM.

107.     Additionally, the SDO's Notice fails to identify any "evidence" supporting her contention that the alleged misconduct occurred with ANHAM USA's knowledge, approval, or acquiescence.  Nor is there any no evidence in the administrative record to justify the immediate suspension of ANHAM USA based on imputation.

108.     Further, the conduct at issue is notably stale, centering around alleged actions occurring more than five years ago.  Since that time, ANHAM USA has taken affirmative and immutable steps to eliminate all vestiges of control held by Huda Farouki.

109.    The FAR requires that a suspension "be imposed only in the public interest for the Government's protection and not for purposes of punishment."  *Id.* at § 9.402(b).

110.    DLA's suspension decision offers no basis for questioning the present responsibility of ANHAM USA, and does not articulate any reasoning that would support an "immediate need" for the suspension.

111.    Nor does anything in the administrative record demonstrate that any immediate action was necessary to protect the Government's interest.  DLA's suspension of ANHAM USA on such a basis is arbitrary, capricious and otherwise not in accordance with the law in violation of the APA.

112.    Similarly, the February 11, 2019 decision to uphold the suspension of ANHAM USA did not correct the inaccuracies contained in the original decision, and failed to provide any tangible basis for concluding that continued suspension on the basis of affiliation was justified.

113.    The Agency's inaction and willful non-responsiveness to ANHAM's offer to address each of DLA's stated bases for the suspension suggest that the suspension decision is not based on any legitimate concern regarding affiliation or present responsibility, but an illegal determination to exclude ANHAM from competing for DLA awards, and remove ANHAM's standing to continue its protest in the Court of Federal Claims regarding the SPV-K award.  It also violates the Agency's duties to "conduct business with integrity, fairness, and openness." *See id.* §§ 1.102-2, 3.101-1.

114.    DLA's suspension of ANHAM USA on such a basis is arbitrary, capricious and otherwise not in accordance with the law in violation of the APA.

115.    This violation of the APA is presently causing ANHAM USA reputational and competitive harm, for which ANHAM USA will have no adequate remedy at law if the

Government is permitted to proceed with its suspension decision, jeopardizing its very viability. DLA's suspension action against ANHAM USA must be found void *ab initio*.

## COUNT III
## Declaratory Judgment for ANHAM FZCO

116.    The allegations contained in Paragraphs 1-115 are incorporated herein by reference.

117.    The Declaratory Judgment Act, 28 U.S.C. § 2201, grants this Court authority to declare ANHAM legal rights where an actual controversy exists.

118.    As set forth herein, an actual controversy exists between ANHAM and DLA within the jurisdiction of this Court.

119.    For the reasons set forth herein, ANHAM is entitled to a declaration that the December 27, 2018 Notice of Suspension of ANHAM and the February 11, 2019 decision upholding the suspension were arbitrary, capricious and otherwise not in accordance with the law in violation of the APA.

## COUNT IV
## Declaratory Judgment for ANHAM USA

120.    The allegations contained in Paragraphs 1-119 are incorporated herein by reference.

121.    The Declaratory Judgment Act, 28 U.S.C. § 2201, grants this Court authority to declare ANHAM USA legal rights where an actual controversy exists.

122.    As set forth herein, an actual controversy exists between ANHAM USA and DLA within the jurisdiction of this Court.

123.    For the reasons set forth herein, ANHAM USA is entitled to a declaration that the December 27, 2018 Notice of Suspension of ANHAM USA and the February 11, 2019 decision

upholding the suspension were arbitrary, capricious and otherwise not in accordance with the law in violation of the APA.

## PRAYER FOR RELIEF

WHEREFORE, ANHAM FZCO and ANHAM USA respectfully request that this Court enter judgment providing them with the following relief:

124.    Declare that DLA's December 27, 2018 suspension of ANHAM and the February 11, 2019 decision to uphold the suspension were arbitrary, capricious and otherwise not in accordance with the law in violation of the APA, and DLA's decision to suspend ANHAM is void *ab initio*.

125.    Declare that DLA's December 27, 2018 suspension of ANHAM USA and the February 11, 2019 decision to uphold the suspension were arbitrary, capricious and otherwise not in accordance with the law in violation of the APA, and DLA's decision to suspend ANHAM USA is void *ab initio*.

126.    Enjoin DLA immediately from enforcing the suspension against ANHAM, requiring DLA to rescind its notice of suspension for ANHAM and remove ANHAM's suspension on the System for Award Management (SAM.gov) and any similar Government database.

127.    Enjoin DLA immediately from enforcing the suspension against ANHAM USA, requiring DLA to rescind its notice of suspension for ANHAM USA and remove ANHAM USA's suspension on the System for Award Management (SAM.gov) and any similar Government database.

128.    Enter a preliminary and permanent injunction to enjoin DLA from enforcing the suspension against ANHAM, requiring DLA to rescind its notice of suspension for ANHAM, remove ANHAM's suspension on the System for Award Management (SAM.gov) and any

similar Government database, and delete the entirety of the records of the suspension of

ANHAM from the System for Award Management (SAM.gov) and any similar Government

database.

129.    Enter a preliminary and permanent injunction to enjoin DLA from enforcing the

suspension against ANHAM USA, requiring DLA to rescind its notice of suspension for

ANHAM USA, remove ANHAM USA's suspension on the System for Award Management

(SAM.gov) and any similar Government database, and delete the entirety of the records of the

suspension of ANHAM USA from the System for Award Management (SAM.gov) and any

similar Government database.

130.    Award Plaintiffs the reasonable attorneys' fees and costs expended herein.

131.    Grant such additional relief as this Court deems just and proper.

Respectfully submitted,

Dated:  April 26, 2019

/s/      Anand V. Ramana
Anand V. Ramana, D.C. Bar No. 489478
Kevin P. Connelly, D.C. Bar No. 412863
Eric J. Marcotte, D.C. Bar No. 446926
Vedder Price P.C.
1401 I Street, NW, Suite 1100
Washington, DC 20005
(202) 312-3320 (phone)
(202) 312-3322 (fax)
aramana@vedderprice.com
kconnelly@vedderprice.com
emarcotte@vedderprice.com

*Counsel for Plaintiffs*
*ANHAM FZCO and ANHAM USA, Inc.*

Of Counsel:

VEDDER PRICE P.C.

Kelly E. Buroker
(*application for pro hac vice forthcoming*)
D.C. Bar No. 989787
Vedder Price P.C.
1401 I Street, NW, Suite 1100
Washington, DC 20005
(202) 312-3339 (phone)
(202) 312-3322 (fax)
kburoker@vedderprice.com

Jeffrey M. Lowry
(*application for pro hac vice forthcoming*)
D.C. Bar No. 1618222
Vedder Price P.C.
1401 I Street, NW, Suite 1100
Washington, DC 20005
(202) 312-3034 (phone)
(202) 312-3322 (fax)
jlowry@vedderprice.com

Tamara Droubi
(*application for pro hac vice forthcoming*)
D.C. Bar No. 1025088
Vedder Price P.C.
1401 I Street, NW, Suite 1100
Washington, DC 20005
(202) 312-3368 (phone)
(202) 312-3322 (fax)
tdroubi@vedderprice.com